## HONEYCUTT v. BASS et al.
### No. 5888.

Court of Appeal of Louisiana.
Second Circuit.
March 8, 1939.

James I. Smith and Earl E. Kidd, both of Winnfield, for appellant.

Harry Fuller, of Winnfield, for appellees.

HAMITER, Judge.

Exceptions of no cause and no right of action, filed herein by all defendants, were sustained and plaintiff perfected this appeal.

The purpose of the suit is to recover damages for injuries alleged to have been inflicted on plaintiff by fellow prisoners while he was an inmate of a jail. It is directed against the Marshal and Deputy Marshal of Winnfield, Louisiana, and the surety on the former's bond.

The pertinent allegations of the petition are substantially as hereinafter stated.

While visiting in the Town of Winnfield, Winn Parish, Louisiana, on February 14, 1936, plaintiff, a resident of Grant Parish, Louisiana, was arrested by Herbert W. Bass and Oscar Barton, who are, respectively, "the duly elected, qualified and acting Marshal and Deputy Marshal of the Town of Winnfield, Louisiana, and were such for several months prior to February, 1936." The charge lodged against him was that of being drunk. He was incarcerated in the parish jail, situated in that town, because the town jail was then undergoing repairs.

About 4 o'clock of the afternoon of the following day, while he and two negro prisoners were in the run-around or open part of the jail, located on the ground floor, the said Marshal Bass and Deputy Marshal Barton brought in one Benny Bratton and placed him in a cell adjoining the run-around; but they "carelessly, negligently and willfully failed to lock said Bratton in the cell, leaving your petitioner and the other prisoners free to be attacked and assaulted by said Bratton." The latter was violently drunk and in a belligerent mood; "that said Bratton, your petitioner is informed, had just been arrested by said Marshal and Deputy Marshal for drunkenness and fighting; that at the time of said Bratton's incarceration said marshal and deputy knew that said prisoner Bratton was in a dangerous condition and would if possible continue to fight and assault any person in reach if not restrained by being locked up in a cell of said jail, until the effects of alcoholism had passed away; that there were objects lying about on the lower floor of the said jail, of which said marshal and deputy had knowledge, which objects were bottles, pieces of iron, large sections of galvanized pipe, which said objects in the hands of one bent on mischief became deadly weapons, and could do great bodily harm and cause death."

On the same afternoon, one Joe Massey was placed in jail by Deputy Marshal Barton. He "was likewise drunk and in a belligerent mood, and in a condition wherein said Barton knew that he would likely launch an assault on any one he could reach." Massey was not locked in a cell but was placed in the run-around. When Massey learned that Bratton was in jail and that his cell door was unlocked, he "entered into a conspiracy with said Bratton to assault your petitioner and the other prisoners who were in the aforesaid run-around, and unprotected from such assault."

Bratton and Massey then attacked and assaulted the aforementioned negro prisoners and plaintiff. "Without warning, provocation or for any justifiable reason whatever, said Bratton struck your petitioner a terrible blow in the face with an iron pipe or similar weapon, which said blow broke petitioner's cheek bone on the right side of his face, and crushed it inward into his face."

The "injury resulted because Marshal Bass and Deputy Marshal Barton placed said Bratton and Massey in jail in a drunken condition without locking them in a cell; that their failure to lock them in a cell was the grossest and most inex-

cusable negligence; that they were likewise grossly negligent in permitting pieces of iron, galvanized pipe and bottles to lay about on the floor of said jail, which could be used as weapons."

The National Surety Corporation issued a bond, "assuring and guaranteeing the well and faithful performance of said Herbert W. Bass in his duties and responsibilities as Marshal of the Town of Winnfield, Louisiana."

Plaintiff prays for a solidary damage award as satisfaction for his injuries, against the said marshal, the deputy marshal and the surety, the claim against the first two named defendants being for $5,000, while that against the latter is for $1000.

It is elementary that the factual allegations of a petition must be accepted as true, and are controlling, for the purpose of disposing of an exception of no cause of action. With this principle of law in mind we shall first give consideration to the claim urged against the surety, remembering that the alleged wrongdoing of the marshal and deputy marshal was committed while they were acting in the capacity of peace officers.

The bond in question is made a part of the petition and a certified copy of it is in the record. We find therefrom that Herbert W. Bass, as principal, and the National Surety Corporation "are held and firmly bound unto Town of Winnfield, Louisiana, in the penalty of $1000.-00 * * *." The general condition of the obligation is declared to be "that if the said principal shall well and truly perform all the duties of his said office or position, and shall pay over and account for all funds coming into his hands by virtue of his said office or position as required by law, then this obligation shall be null and void, otherwise to be and remain in full force and virtue." In addition to the foregoing, four certain expressed and particular conditions are stated in the instrument, the first of which relates to the surety's right to cancel the bond on giving a designated notice to the Town of Winnfield, Louisiana, while the others pertain to the performance of civil duties and functions by the principal.

Our study of the instrument convinces us that the obligation provided protection only to the Town of Winnfield. The named municipality is the sole obligee mentioned therein.

The Supreme Court in Martin v. Magee et al., 179 La. 913, 155 So. 433, 434, decided in the year 1934, gave consideration to an issue somewhat similar to the one under consideration. In the opinion of that case, Chief Justice O'Niell states: "We are not aware of any decision rendered by this court on the question presented in this case. In other jurisdictions the rule is that no individual has a right of action on an official bond given by a police officer in favor of the municipality, for damages for injuries suffered at the hands of the officer while in the discharge of his official duties."

He then quotes, and inferentially favors, the following statement found in 19 A.L.R. 73: "The majority of the few decisions upon the question of the right of an individual to maintain an action upon the bond of a peace officer running to the public, and conditioned upon the faithful performance of his duties as a guardian of the law, are to the effect that such an action cannot be maintained by a stranger to the contract, such as an individual member of the public, to recover damages or penalty for injuries sustained by him at the hands of the officer; at least, in the absence of legislation expressly giving him a right of action on the bond."

In view of the referred to authority, and as no legislation authorizing the institution of a suit by an individual on such a bond has come to our attention, we hold that the exceptions filed by the defendant surety company were correctly sustained.

With reference to the alleged liability of the marshal and deputy marshal, we are faced with a paucity of judicial precedents that lend assistance in reaching a conclusion. No Louisiana decisions, pertinent to the issue, have been found.

In 50 Corpus Juris, page 340, verbo "Prisons", it is stated: "While a breach of a prison official's duty to use reasonable care to prevent injuries to a prisoner by his fellow prisoners may subject him to liability for the injuries proximately caused thereby, he is not liable for an injury of which his act or neglect was not the proximate cause, nor where he had no reason to anticipate the injury. Where a jailer or warden knowingly permits one prisoner to assault another, and uses no reasonable means to prevent it, he is liable to the assaulted prisoner."

The following is given in the annotations of 46 A.L.R., page 114: "The gen-

eral rule gathered from the cases which have considered the question as to the liability of an officer in charge of a jail or prison for an injury inflicted by one prisoner upon another prisoner is that, in order to hold the officer liable for such injuries, there must be knowledge on the part of such officer that such injury will be inflicted or good reason to anticipate danger thereof, and negligence in failing to prevent the injury."

It was held in Eberhart v. Murphy, 110 Wash. 158, 188 P. 17, and on rehearing, 113 Wash. 449, 194 P. 415, that a sheriff owes a duty to one placed under arrest to keep him safe and protect him from unlawful injury.

The plaintiff in Ratliff v. Stanley et al., 224 Ky. 819, 7 S.W.2d 230, 231, 61 A.L.R. 566, instituted suit against the jailer of Pike County, Kentucky, and the surety on his official bond, to recover damages for injuries alleged to have been sustained by him while incarcerated in jail. The Kentucky Court of Appeals considered the case on an appeal from a judgment sustaining a demurrer to the petition. In holding that a cause of action had been stated by plaintiff, the court used the following interesting language: "The question presented by the petition at least has the merit of novelty. The only cases called to our attention in briefs of counsel or disclosed by our independent investigation in which are discussed the operations of kangaroo courts and the liability of jailers for injuries to prisoners attributable thereto are Hixon v. Cupp, 5 Okl. 545, 49 P. 927 * * *. In all of these cases the liability of the jailer for such injuries is recognized where he had reasonable ground to apprehend the danger to the prisoner. The law imposes the duty on a jailer to exercise reasonable and ordinary care and diligence to prevent unlawful injury to a prisoner placed in his custody, but he cannot be charged with negligence in failing to prevent what he could not reasonably anticipate."

The aforequoted judicial expressions accord with our views on the subject, and, we think, enunciate a sound, logical and commonsense doctrine.

In considering the instant controversy in the light of the announced principles, we are warranted in treating the marshal and deputy marshal as having acted in the capacity of co-jailers or co-officers in charge of the jail in question; for it was they who actually, directly and unassisted, placed Benny Bratton, one of the alleged offenders, in the unlocked cell. Further, the petition states that "there are cells adjacent to the said run-around on the said lower or ground floor, provided with locks, in which prisoners may be individually locked up by aforesaid marshal and deputy." The question then presents itself,—Did such officers have knowledge that the injury would be afflicted on plaintiff, or could they have reasonably anticipated danger thereof, and failed to prevent it?

Considering the above recited averments of fact of the petition, on which our decision must be predicated as aforestated, the conclusion must be reached that both officers had reasonable grounds to apprehend the danger to plaintiff. Of course, the matter of their substantiation by proper and competent evidence is not now before us. Those averments, some of which we deem necessary to again state, disclose that Bratton was violently drunk and in a belligerent mood when brought to the jail, he having just been arrested by said defendants for drunkenness and fighting; that when incarcerated "said marshal and deputy knew that said prisoner Bratton was in a dangerous condition and would if possible continue to fight and assault any person in reach if not restrained by being locked up in a cell of said jail, until the effects of alcoholism had passed away"; that his cell was left unlocked; and that he was thus afforded the opportunity of obtaining bottles, pieces of iron and other objects, and of assaulting and attacking plaintiff. Therefore, it is our opinion that the exceptions filed by the marshal and deputy marshal should not have been sustained.

Accordingly, the judgment of the trial court insofar as it sustains the exceptions filed by the National Surety Corporation is affirmed; otherwise, it is reversed and set aside, the exceptions of no cause and no right of action tendered by defendants Bass and Barton are overruled, and the case is remanded to be tried according to law. Costs of this appeal shall be paid by said defendants Bass and Barton, while all other costs shall abide the final determination of the cause.