BARNETTE, Judge.
Plaintiff, Roger D. Barlow, instituted suit seeking the recovery of damages for burn injuries he allegedly received on or about February 27, 1967, while confined in the rear seat of a patrol car of the New Orleans Police Department following his arrest for public drunkenness. Officers Gerald O’Neill and John Márchese arrested Barlow at a barroom on the corner of Camp and Julia Streets in the City of New Orleans. Plaintiff charged Officers O’Neill and Márchese with negligence in the performance of their police duties in failing to take the necessary steps and reasonable precautions to insure his safety by leaving him unattended in a locked police vehicle, and in failing to protect him from the hazard which caused his injuries. In the alternative he urged the doctrine of res ipsa loquitur and by supplemental petition the doctrines of last clear chance and discovered peril.
Defendants, the City of New Orleans, the employer of the police officers, and Travelers Insurance Company, the public liability insurer of the City of New Orleans, answered and denied negligence on the part of Officers O’Neill and Márchese. Defendants further alleged that the burns sustained by plaintiff were caused solely and proximately by his own negligence. In the alternative defendants urged the defense of contributory negligence. After trial on the merits judgment was rendered against defendants for the sum of $9,100. Defendants have appealed suspensively. Plaintiff answered the appeal seeking an increase in the award.
On the whole, there is no material conflict in the findings of fact of the trial court and the findings we have reached after a careful consideration of the record. As we discuss these facts below we will indicate the one or two points on which we have reached a different conclusion.
On the morning of February 27, 1967, New Orleans Police Officers Gerald O’Neill and John Marchese reported for duty at 7:30 a. m. at the First District Police Headquarters. Their period of duty was to extend from 7:30 a. m. to 3:30 p. m. that day. Following roll call and a cursory inspection of their patrol vehicle, Car 14, they left their headquarters and proceeded to their patrol zone. Officer O’Neill was driving that day and Officer Márchese was writing the arrest reports. The patrol zone to which they were assigned embraced the corner of Camp and Julia Streets at which is located Camp Inn, a restaurant and bar. The area in question is known for the many drunks and vagrants who walk the streets and patronize the bars in that section. Officers O’Neill and Márchese had made many arrests of such persons in that area on prior occasions.
Shortly after 8 a. m. Officers O’Neill and Márchese entered Camp Inn and became engaged in a conversation with the owner of the establishment, Gabriel Castrinos, concerning the conditions in the area. The three proceeded to the rear of the establishment to play a phonograph record made by a fellow police officer in the hope that Castrinos would place the record on his juke box. At this point, plaintiff was observed seated at one of the tables apparently asleep with his head resting on his arms. Castrinos advised the officers that his *49 waiters had attempted to remove the plaintiff from the premises but were unsuccessful in their efforts. After the record was played, the officers agreed that O’Neill would arrest the plaintiff for public drunkenness and take him to the patrol car while Márchese inspected the rear room of the establishment for possible loiterers and vagrants.
After awakening the plaintiff, Officer O’Neill walked him out to the patrol car, which was parked against the uptown curbing of Julia Street facing in the direction of St. Charles Avenue. A “pat” search was made of the exterior of plaintiff’s clothing and he was locked in the vehicle.
The patrol car was especially designed and equipped for the confinement and transportation of prisoners. The rear of the vehicle had a metal cage-like partition between the front and rear seats, with similar cage-like metal barriers over the rear windows. The handles on the rear doors had been removed and the latches could only be released by a push-button device located under the front dashboard. Barlow was locked in the back seat of the patrol car and immediately he slumped into a sleeping position.
After locking Barlow in the vehicle, O’Neill returned to the Camp Inn to assist Márchese if necessary in the inspection of the premises. The two officers engaged in further conversation with Castrinos, and some minutes later, the exact length of time being disputed, someone came to the front door and informed the officers there was a fire in the police car. The officers immediately rushed out to the vehicle and pressed the buttons to release the rear door latches. The left rear door opened on its own due to the vehicle being parked on an incline. Fire and smoke were noted in the left rear portion of the vehicle. Barlow, who was then located in the right rear portion of the vehicle proceeded from that point out of the left rear door through the flames. After attending to the plaintiff, the officers summoned a fire department crew who extinguished the fire. Barlow was removed to Charity Hospital for emergency care and treatment. He was released from Charity Hospital on April 10, 1967, having remained there for a period of 42 days.
The trial judge found that the officers were in the restaurant and bar “approximately fifteen minutes” while Barlow was left unattended in the locked patrol car. The testimony is in conflict on this point, and we think it is impossible to determine factually the length of time Barlow was unattended. We think the preponderance of evidence indicates that it was not as long as IS minutes.
The alleged negligence of Officers O’Neill and Márchese necessarily involves first a determination of the degree of care owed by them to plaintiff because of his intoxicated condition and his confinement and detention in the locked patrol car, and secondly, whether or not there was any breach of that duty. Interrelated with these questions is the issue of contributory negligence on the part of plaintiff.
From a reading of the record it is obvious that plaintiff was very drunk when placed in the patrol car. Officer O’Neill testified that he had to help Barlow out to the car. He stated: “I had to assist the man. I had to hold onto him. If I didn’t, he would have fallen on his face.” Barlow admitted that he had been on a drunken spree all weekend and that he probably had visited all the bars in the area. He could not recall if he had worked the previous Saturday. He had a long record of prior arrests for public drunkenness, several having been made by the two officers in this suit. However, the officers testified that Barlow was known as a “quiet drunk” and caused little trouble.
Defendants argue that there was no negligence on the part of the officers in leaving Barlow unattended for a short time in the locked patrol car, especially in his condition of extreme intoxication apparently slumped in sleep and posing no immediate threat to safety of himself or others. Fur *50 thermore they argue that there was no duty on their part to anticipate the occurrence of a fire of unknown origin.
 From our jurisprudence has evolved a principle of law that imposes upon a police officer the duty to exercise reasonable and ordinary care and diligence to prevent injury to a prisoner in his custody ; but he is not charged with negligence in failing, to prevent that which he cannot reasonably foresee might happen. The jurisprudence also supports the principle that in the case of an intoxicated prisoner the police officer is impelled to use a higher degree of care for his safety and protection than is necessary or expected in the case of one who has control of his physical and mental faculties and able to protect himself. See Shuff v. Zurich-American Insurance Company, 173 So.2d 392 (La.App. 1st Cir. 1965); Kimbrell v. American Indemnity Co., 56 So.2d 880 (La.App. 2d Cir. 1952); Honeycutt v. Bass, 187 So. 848 (La.App. 2d Cir. 1939).
We must conclude that the fire was of unknown origin. Much testimony and argument was in the realm of speculation. It was factually established that there was no defect in the mechanical or electrical systems of the patrol car. There is no evidence to indicate that there was smoldering fire which suddenly burst into flame. After the fire was extinguished, water was standing a few inches deep in the recessed right and left sections of the floor in the back seat area of the car. Portions of a safety match box, several unspent matches and some used matches were found floating in the right floor section. The plaintiff was last seen by Officer O’Neill slumped in a sleeping position in the right corner of the back seat. The fire damage was principally on the left side on and behind the front seat. Flames scorched the left rear door and burned the overhead top lining. There is no evidence that Barlow was smoking or that he had cigarettes in his possession.
From these facts the defendants strenuously argue that all circumstances point to the conclusion that Barlow either deliberately or negligently started the fire, which, in either event, would be an effective bar to his recovery of damages. If we were compelled to resort to speculation we would be more inclined to the conclusion that the fire was caused by striking matches rather than from some latent condition of the automobile, but no such speculation would justify the conclusion that Barlow did in fact cause the fire. Barlow was, in a sort of perfunctory fashion, searched. No matches were reported to have been found on his person, if so, they should have been removed. Furthermore the matches could have been left in the car by someone using it on the night shift before it was turned over to Officers O’Neill and Márchese.
The defendants have relied on the authorities which hold that voluntary intoxication does not relieve one from his accountability for contributory negligence, citing Manuel v. United States Fire Ins. Co., 140 So.2d 702 (La.App. 3d Cir. 1962). We concur in this principle of law, but it is not applicable where there is no convincing evidence of such negligence. The plea of contributory negligence as a bar to recovery of damages is an affirmative defense, the burden of proof of which is carried by defendant. There is at most a speculation which might be drawn from the circumstances, but it cannot be made the basis of a judgment. Davis v. Royal-Globe Insurance Companies, 223 So.2d 912 (La.App. 4th Cir. 1969) ; McDonald v. Scotlandville Fire Protection District Commission, 222 So.2d 324 (La.App. 1st Cir. 1969). We must hold therefore that the defendants have failed to carry the burden of proof of their affirmative defense.
We must conclude that Barlow, because of his extreme state of intoxication, was in no condition to protect himself from dangers which might result from his own acts, the acts of others or even from unforeseeable hazards. Under these con *51 ditions, except for an emergency, it is a breach of duty on the part of a police officer to leave an arrestee unattended in a locked police vehicle for any appreciable length of time. There is nothing in the evidence to support a finding that an emergency existed which required Officer O’Neill to leave Barlow unattended and return to the restaurant and bar. There were two officers working together and there is no showing necessity which would require that their prisoner be left unattended. We therefore hold that there was a breach of the duty owed to him by the arresting officers.
The defendants-appellants have made no contention in this court that the award of $8,000 for pain and suffering is excessive. They do, however, contend that it is fully adequate to compensate plaintiff if their liability is affirmed. The plaintiff has answered the appeal seeking an increase.
The plaintiff, aged 34, was confined in the hospital for treatment for a period of 42 days. There can be no doubt that during this period he experienced considerable pain and discomfort. The hospital records filed in evidence describe the injury as “second and third degree burns of hands and legs.’.’ There were also first degree burns about the face. The nature and extent of his injuries required skin grafts and other treatments, some of which were quite painful.
He was discharged from the hospital on April 10, 1967, and on April 25 was examined by Dr. Louis Krust, a specialist in the field of plastic surgery and qualified from education and experience as an expert in burn cases. His examination at that time revealed relatively deep burns on the backs of both hands which had healed. There was slight impairment of flexion but no swelling or contracture due to scarring. There was a healed area of burns measuring 10 by 15 centimeters on the left leg. This was described as a second degree burn that did not require grafting.
The burns on plaintiff’s right leg appeared to have been more serious, with indications of spotty areas of third degree burns over the leg and foot requiring skin grafts. There were several spotty unhealed areas on the right foot with some swelling and oozing which Dr. Krust thought would heal eventually. Following the examination Dr. Krust recommended soaking in salt water solutions and avoiding as much walking as possible until the foot healed. No medication was prescribed nor further treatment indicated. He recommended exercise of the hands to restore full range of motion. He indicated that the scars on the hands and legs would be permanent. No reference was made to the facial burns.
Dr. Krust saw plaintiff again on April 8, 1968 for further examination. He did not treat plaintiff, and there is no evidence that he received treatment from any other physician after discharge from the hospital. At the time of this second and final examination Dr. Krust found all the burned areas healed with restoration of full range of motion in the fingers of both hands except for some slight loss of flexion of the right little finger. There was one thickened linear scar over the top of the right foot, but there were no contractures, no limping and no complaint of pressure. The scars described as permanent on the first examination were still apparent on the second examination. Dr. Krust found plaintiff able to return to full duty as a laborer. He rated the disability overall at 5 percent on the basis of the possibility of scuffing of the scarred areas.
The trial judge gave an award of $8,000 for physical pain and suffering, and made no mention of disability nor loss of income during the period of temporary disability. We are convinced that the injuries were very painful during the period of treatment with decreasing severity during the period of recovery following release from the hospital. The award of $8,000 is, in our opinion, a fair and reasonable compensation for plaintiff’s pain and suffering and such slight disability as may be perma *52 nent. He made no claim for disfigurement. We find no abuse of the “much discretion” vested in the trial judge and any disturbance of his award would not be justified. Lomenick v. Schoeffler, 250 La. 959, 200 So.2d 127 (1967); Ballard v. National Indemnity Company of Omaha, Neb., 246 La. 963, 169 So.2d 64 (1964); Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963).
The plaintiff’s claim of damages for loss of wages is so lacking in support of evidence that we deem it unnecessary to discuss it. Apparently the trial judge was of the same opinion since he made no mention of this item of damage. Suffice to say that plaintiff’s habits and extremely poor and intermittent work record would make it extremely difficult to support a claim for loss of wages.
The trial judge granted plaintiff’s claim for special damage of $1,100 for hospital and medical expenses. The Charity Hospital statement is not disputed as to amount, but defendants do protest the allowance of this item of special damage. They argue that the plaintiff met the qualifications for charity care at the Charity Hospital. They argue further that if recovery of this sum is due at all, it is due only to the hospital, which has not intervened in this suit and its right of recovery has now prescribed.
This question is not new to this court. It has been resolved by us against the contention made on behalf of the defendants. Bean v. Toney, 173 So.2d 31 (La.App. 4th Cir. 1965).
For these reasons the judgment in favor of Roger D. Barlow against the City of New Orleans and Travelers Insurance Company in the sum of $9,100 with legal interest from date of judicial demand, together with all costs in both courts, is affirmed.
Affirmed.