241 So.2d 501

Roger D. BARLOW

v.

CITY OF NEW ORLEANS and Travelers Insurance Company.

No. 50301.

Nov. 9, 1970.

Jones, Walker, Waechter, Poitevent, Carrere & Denegre, James L. Selman, II, and R. Henry Sarpy, Jr., New Orleans, for defendants-appellants.

Law Offices of Steven R. Plotkin, Steven R. Plotkin and Owen J. Bradley, New Orleans, for plaintiff-appellee.

McCALEB, Justice.

We granted certiorari at the instance of defendants, City of New Orleans and its public liability insurer, Travelers Insurance Company, to review a judgment of the Court of Appeal (4th Cir.) affirming a judgment awarding $9,100 damages for injuries sustained by plaintiff as the result of a fire originating in the rear of a locked police car in which plaintiff had been placed and left unattended by two police officers of the City of New Orleans following his arrest for public drunkenness. See Barlow v. City of New Orleans, La.App., 228 So.2d 47.

At about 8 o'clock on the morning of February 27, 1967 the police officers, O'Neill and Marchese, stopped at the Camp Inn barroom located at 801 Camp Street in the City of New Orleans primarily for the purpose of inducing the proprietor of the bar to play a phonograph record made by a fellow police officer on the juke box of the establishment. When they entered, plaintiff was slumped over a table in the bar in a highly intoxicated condition and, at the request of the proprietor, Gabriel Castrinos, plaintiff was arrested and taken by Officer O'Neill to the police car where he was locked in the rear compartment used for the temporary confinement of prisoners upon arrest. At the time plaintiff was arrested for public drunkenness, he was in such a state of intoxication that he could not walk and had to be assisted to the vehicle.[1] A "pat down" was conducted by O'Neill before plaintiff was placed in the police car and, when he locked him in

---

[1] O'Neill testified that upon taking Barlow in custody he "had to almost carry him out. He was highly intoxicated." He said, "I had to assist the man. I had to hold on to him. If I didn't he would have fallen on his 'face.'"

the rear compartment, the officer then returned to the bar where, allegedly, his partner was making a search of the back rooms for vagrants or other intoxicated persons. Some minutes after plaintiff was thus left unattended in the police vehicle, with all windows rolled up and locked securely, a fire broke out in the rear section where he was incarcerated. The officers were then summoned by a person unknown[2] and, upon release of the automatic locks, plaintiff emerged from the car. He suffered burns to his arms, legs and other parts of his body for which he was treated and confined at Charity Hospital for some forty-two days.

This suit for damages followed in which recovery is sought on the basis of the alleged negligence of the police officers in leaving plaintiff unattended in the locked vehicle in his intoxicated condition, and in failing to protect him from the hazard which caused his injuries. The defendants deny negligence on the part of the police officers and assert, alternatively, the defense of contributory negligence, contending that plaintiff started the fire by striking matches. It is alleged that, because investigation disclosed the presence of spent matches in the rear of the police car and that no mechanical or electrical failure ex-

isted, it may be inferred, in the absence of any other evidence as to the cause of the fire, that it was started by the striking of matches by plaintiff himself.

Plaintiff denies he started the fire. Also, in dispute is the length of time plaintiff was left unattended in the locked vehicle (estimates were given ranging from a few minutes to fifteen minutes) and the reason for Officer O'Neill leaving plaintiff after the arrest and why he returned to the bar.[3]

Both the district court and the Court of Appeal concluded that there was a breach of duty on the part of the officers under the circumstances presented, i. e., the extreme state of intoxication of plaintiff, the absence of an emergency necessitating the officers leaving plaintiff unattended, and the fact that the vehicle was locked which made it impossible for plaintiff to escape from the danger to which he was exposed by reason of the fire. Neither court perceived merit in the affirmative defense of contributory negligence.

Defendants contend here that the Court of Appeal erred in holding the police officers guilty of any breach of duty; in concluding that Officer O'Neill was negligent in leaving plaintiff unattended in the rear

2. Although the appellation "unknown" is used with reference to the individual who notified the officers of the fire, the record shows that he was known to the owner of the bar and worked in the vicinity.

However, efforts to locate this person at the time of trial were fruitless.

3. One witness stated that the officer was playing the pinball machine, which he denies.

of the police vehicle; in finding that the fire was of unknown origin and should have been foreseeable by the arresting officers; and in failing to find contributory negligence on the part of plaintiff under the evidence adduced.

Concerning the charge of negligence against the police officers, counsel for defendants argue that, since the evidence of the arresting officers shows that plaintiff was a well-known, quiet drunk who had been arrested on many previous occasions by these officers in a more or less unconscious condition due to intoxication, it is unreasonable to deduce that they should have foreseen that, after plaintiff had been placed in the rear compartment of the police car in his helpless condition with the doors and windows well secured, he would sustain injury of any sort. The theory of this defense, of course, is the principal premise of defendants' case that plaintiff started the fire himself as a means of escape from the vehicle.

This postulation is untenable in our view. It seems manifest that where a person is arrested for drunkenness and confined in an automobile from which he cannot escape, it would be unrealistic to conclude that the arresting officers owe him no duty to see that he may not be harmed from an outside source or other source, or that he is not entitled to protection from injury resulting from his own unconscious acts while he is in the custody of the arresting officers. And it will not do, in the absence of a showing of an emergency which demanded the immediate attention of the officers to other police work, for the officers to say that because they were handling a docile drunk they could not foresee that he might suffer injury. On the contrary, the courts of this State have recognized the general principle stated in 38 American Jurisprudence, Negligence, Section 39, page 684 that, when a person is so intoxicated as to be incapacitated for physical or mental effort, a greater duty is owed to him by the person whose duty it is to exercise care for his safety. Shuff v. Zurich-American Insurance Company, La.App., 173 So.2d 392; Kimbrell v. American Indemnity Co., La.App., 56 So.2d 880. Such an intoxicated person has been likened to that of a child of tender years. In Gouzien v. Feraci, 2 La.App. 115, it is stated:

"But being drunk did not put him beyond the protection of the law. On the contrary, it placed him in the position of a child—or those unable to take care of themselves and called for more caution on the part of others. Horsthemke v. New Orleans Ry. & Light Co., 146 La. 931, 84 So. 210."

The duty of care owed one under arrest and in custody to keep him safe and protect him within reasonable limits from injury not attributable to his own willful

act has been recognized by all courts. For example, in Honeycutt v. Bass, La.App., 187 So. 848, which incidentally contains an excellent discussion of this principle by Chief Justice Hamiter, the court concluded that a jailer should and could reasonably anticipate the danger of placing a belligerent drunken prisoner, who had propensities to assault, with another drunken prisoner, who was the victim of the assault. It is the rule, apart from statutory requirements, that a sheriff or police officer owes a general duty to a prisoner to save him from harm and the officer is liable for the prisoner's injury or death resulting from a violation of such duty by negligence or other acts. See 41 Am.Jur. Prisons and Prisoners, Sec. 12, p. 893 and p. 152 Supp.; Smith v. Miller, 241 Iowa 625, 40 N.W.2d 597, 14 A.L.R.2d 345 and annotation found therein at page 366, Sec. 8 "Fires in the Prison."

So, in the case at bar, we hold that it was negligence on the part of the arresting officer to leave plaintiff unattended in the locked car after his arrest, in the absence of emergency, for any appreciable length of time, and it is immaterial whether it was for a few minutes, as the officers say, or fifteen minutes as avouched by other witnesses. The fact is that plaintiff was left unattended by the officers for a period long enough for a fire to start (if it had not already started) and burn sufficiently inside the rear compartment of the automobile to inflict the injuries of which plaintiff complains.

While defendants' plea that plaintiff was contributorily negligent has given us some concern, we are of the opinion the Court of Appeal was correct in rejecting it. The theory of the plea as we understand it is two-fold: first, that plaintiff deliberately started the fire so that he could escape, and secondly, in any case that circumstantial evidence establishes his contributory negligence since an inspection of the police car after the fire revealed no defects in the mechanical or electrical system which would have triggered the conflagration, and, therefore, the fact that burned or spent matches were found on the floor of the locked rear compartment where plaintiff was confined indicates that he must have struck the matches and thus started the fire.[4]

To prove their initial theory that plaintiff deliberately started the fire, defendants depend on a report of the New Orleans Fire Department which was admitted in evidence over objection. This report, which is dated April 2, *1968*, over a

4. Officer Spreen testified that there were burned or spent matches in the vehicle and another officer (Standige, of the Accident Investigation Division) who inspected the vehicle shortly after the fire, stated that he observed an open box of safety matches floating in the water but said he did not remember seeing burned or used matches.

year after the occurrence of the fire on February 27, 1967, states that the officer who prepared it (who was not produced to testify at the trial) was told by an unnamed informant that the occupant of the car set fire to the seats of the car because he was angry at the police officers for leaving him alone in the car while they were getting his belongings out of a rooming house.[5]

We place no credence whatever in this report. The statements therein are the rankest sort of hearsay and are, obviously, in conflict with defendants' primary contention that the officers were free from negligence because they could not foresee that plaintiff could sustain injury as his drunkenness rendered him absolutely helpless.

The other evidence, however, that burned matches were found floating in the rear of the vehicle immediately after the fire, in connection with the other surrounding circumstances, might have justified a conclusion that plaintiff may have in his drunken state struck matches in the vehicle which ignited the conflagration. Nevertheless, the district judge and the Court of Appeal found that the circumstantial evidence was too speculative to warrant the conclusion that plaintiff caused the fire and, therefore, was chargeable with contributory negligence. These deductions are entitled to weight, and after reading the record, we cannot say with any degree of certainty that the conclusions below are erroneous.

But, were it otherwise, we would still be inclined to uphold the decision below for, under the evidence and the basic theory of defendants' denial of liability in this case, it is apparent that plaintiff was so drunk that he was not responsible for his acts. While it is true, as a general rule, that voluntary intoxication does not relieve one from negligent conduct or serve to relax the requirement which is imposed upon a person to exercise due care for his own safety (see 38 Am.Jur., Negligence, Sec. 203, page 883, and 65A C.J.S. Negligence § 143, page 174), this rule is subject to the exception that, where the person is in such a helpless state of intoxication that he is unable to take care of himself and is, as in this case, confined under arrest, recovery for the injuries he has received emanating from a danger to which he is exposed, which is attributable partially to his unconscious act, but against which the defendant should have protected him, is not barred by contributory negligence. See Kimbrell v. American Indemnity, supra; Shuff v. Zurich-American Insurance Company, supra; and other cases heretofore cited in this opinion and, compare, Manuel v. United States Fire Insurance Company, La.App.,

5. Nowhere in the record is there any testimony that the officers were seeking the belongings of plaintiff in a rooming house.

140 So.2d 702, where the exception to the general rule is recognized but rejected under the facts of that particular case.[6]

For the reasons assigned, the judgment of the Court of Appeal is affirmed.

SUMMERS, Justice (dissenting).

Because they were only to be away for a "few" minutes, I believe the duty of care owed by these police officers to this "docile" plaintiff was properly discharged by locking him in the rear of the police car, the inside of which they observed at that time to be free of any object which could cause plaintiff harm. It has not been suggested what more they could do and, under these circumstances. it is not indicated that a reasonable attitude would require police officers to remain with the plaintiff at all times.

. Nor am I willing to accept plaintiff's testimony that he did not light matches which caused the fire. His denial that· he did so indicates to me that he was capable of doing so. The presence of burned or spent matches on the floor of the car after the fire and the uncontested proof that there were no electrical defects or other failings in the car which could cause the fire, satisfy me that plaintiff has not prop-

erly refuted the charge of contributory negligence.

I respectfully dissent.

---

6. Also see Thomas v. Williams, 105 Ga. App. 321, 124 S.E.2d 409 (1962), a case quite similar to the one at bar where the court in overruling a demurrer distinguished its previous decision in Kendrick v. Adamson, 51 Ga.App. 402, 180 S.E. 647 (1935), a case relied upon by defendants.