559 So.2d 500 (1990)
Faye EVANS, Plaintiff/Appellant,
v.
Albert D. HAWLEY, et al., Defendants/Appellees.
No. 21347-CA.
Court of Appeal of Louisiana, Second Circuit.
April 4, 1990.
Writ Denied June 1, 1990.
*501 Bodenheimer, Jones, Klotz & Simmons by J.W. Jones and Norman Lafargue, Shreveport, for Faye Evans.
Charles C. Grubb, City Atty. and Roland J. Achee, Shreveport, for J. Linnear and the City of Shreveport.
A. Mills McCawley, Shreveport, for Louisiana State University Medical Center.
Jack H. Kaplan, Shreveport, for Harry Diebner d/b/a Harry the Bondsman, John W. Minto, F.A. Morgan Bonding Co.
Onebane, Donohoe, Bernard, Torian Diaz, McNamara & Abell by John A. Keller, Lafayette, for American Excess Ins. Co.
Before HALL, C.J., and MARVIN and SEXTON, JJ.
HALL, Chief Judge.
In this wrongful death action, plaintiff Faye Evans appeals from the trial court judgment absolving the City of Shreveport, Officer Johnny Linnear, American Excess *502 Insurance Company, John Minto and F.A. Morgan Bonding Company from liability in the death of Ennest Evans. For reasons stated herein, we affirm.

FACTS
Ennest Evans, the decedent, was involved in an automobile accident during the morning hours of October 30, 1982. The other automobile involved in the accident turned left in front of Ennest Evans causing the collision. The impact of the two vehicles involved considerable force, sufficient to impel Evans forward causing his head to strike and break the windshield. Evans, who had been drinking prior to the accident, left the scene and drove to his place of employment where he attempted some repair to his vehicle.
After officers arrived at the accident scene and received a description of the Evans vehicle, Officer Johnny Linnear located the car at the corner of St. Vincent Avenue and Lash Street. Officer Linnear located Evans in a nearby building sitting on a bench with his head between his legs. After Evans admitted being involved in the accident, Officer Linnear returned Evans to the accident scene where he was identified by the driver of the other vehicle. He was placed under arrest, handcuffed, and transported to police headquarters.
While in route to the station Evans became belligerent when Officer Linnear called ahead to have the breathalyzer machine warmed up and waiting. Officer Linnear called a second time to ask for assistance to be available to help with Evans.
At the station, Evans continued to be belligerent, loud, and abusive, so Officers Linnear and Morgan took Evans to the jail for booking rather than his being booked at the booking desk, the normal procedure. Evans was placed in a small interview room containing a table and four chairs while the paper work was being completed. He was told several times that he was not allowed to smoke until the intoxilizer test was administered. While Officer Morgan was interviewing Evans, he lit a cigarette on three occasions. After Officer Linnear took the third cigarette from him, Evans jumped up from the chair in which he was sitting and headed toward Officer Linnear. Officer Linnear placed his hands on Evans' shoulders and pushed to reseat him in the chair. The chair slipped or Evans missed the chair, falling and striking his head on either the wall or the floor. Evans was rendered unconscious for a period of 30 to 60 seconds. Officer Linnear immediately took Evans to LSU Medical Center for evaluation and treatment.
At LSU Medical Center Evans was evaluated by an emergency medical services physician and an ear, nose and throat resident. A small laceration was noted in his ear for which he was treated. He had no blood behind the eardrum. A neurological workup did not indicate any problems. Evans was released to be returned to jail and was told to make an appointment to return to the ear, nose and throat resident. While in the hospital, Evans and Officer Mickey Lowe, present on an unrelated case and returning Evans to jail, were given a printed sheet of instructions for patients with possible head injuries. The instruction sheet included symptoms to watch for indicating significant head injuries. On leaving the hospital Officer Lowe found Evans who had wandered off at the bus stop across from the hospital. Officer Lowe returned Evans to the station, leaving the head injury instruction sheet with the jailer. Jailer Brumley, aware that Evans might have a problem, placed him in an observation cell. Brumley checked on Evans about every 10 to 15 minutes until his release. Evans complained of headache and mild dizziness.
Evans was brought from the jail around 4:30 p.m. to be bonded out. John Minto with Harry the Bondsman bonding service had been instructed to post bond for Evans, and that Mrs. Evans would meet him at the station. Mrs. Evans did not show up. After Evans was brought downstairs, Minto left Evans sitting on a bench in a waiting room while attempting to locate Mrs. Evans. While alone, Evans fell off the bench. Minto, hearing Evans' fall, found him on the floor. Minto completed the bonding process and had Evans placed in his car *503 around 5:30 p.m. Minto returned to the bonding company office to try and locate Mrs. Evans. Evans was left in Minto's car during this period.
Mrs. Evans arrived at the bonding office around 6:00 p.m. to pick up her husband. Minto assisted Mrs. Evans in placing Evans in the back seat of the car. Evans was taken home and carried into the house and placed on the bed. His condition deteriorated and emergency services were called. The Shreveport Fire Department responded. Evans was found to be comatose and unresponsive. After the ambulance company arrived, Evans was placed on a backboard, 2' by 6' in dimension, to be carried to the ambulance. The backboard was used because the hallway of the Evans residence was too narrow to permit maneuvering of a wheeled stretcher. During the process of moving Evans the backboard had to be tilted to turn a corner in leaving the Evans' bedroom. During the tilting process Evans slipped from the board striking his head on the door frame or floor.
Evans was taken to LSU Medical Center where he underwent surgery and subsequently died on November 2, 1982. The autopsy report revealed that Ennest Evans died of intracranial hemorrhaging.
Plaintiff, Faye Evans, brought this action for wrongful death against Albert and Dorma Hawley, the driver and owner of the other car involved in the accident, and their insurer, Texas County Mutual Insurance Company; the City of Shreveport, and its insurer American Excess Liability Insurance Company; Officer Johnny Linnear; Cuestas, Inc., the ambulance company; Louisiana State University Medical Center; John W. Minto, and his employer, the bonding company. Plaintiff subsequently settled with the Hawleys and their insurer, with Cuestas, Inc., and with LSU Medical Center. These defendants were dismissed. Subsequently a trial was held on the merits and the trial court dismissed John W. Minto during trial. At the conclusion of the trial, judgment was rendered dismissing plaintiff's suit against the remaining defendants. Plaintiff appealed asserting the trial court erred in failing to find Officer Johnny Linnear, the City of Shreveport and American Excess Liability Insurance Company liable for the death of Ennest Evans. Plaintiff also asserts the trial court erred in failing to find John Minto and his employer liable for the death of Ennest Evans.

EXCESSIVE FORCE
Plaintiff asserts two theories for holding the City of Shreveport liable for the death of Ennest Evans. The first is based upon the allegation that the force used by Officer Linnear in subduing Evans at the station was excessive, and the resulting head injury caused or contributed to Ennest Evans' death. The trial court found that the force used by Officer Linnear was reasonable under the circumstances. We agree.
The use of force by law enforcement officers must be tested by the reasonable force standard established by LSA C.Cr.P. Art. 220.[1] The use of force when necessary to make an arrest, subdue, or detain an arrestee is a legitimate police function. The force used, however, must be reasonable. Whether the force used is reasonable depends on the totality of the facts and circumstances in each case. The court must evaluate the officers actions against those of the ordinary, prudent and reasonable man placed in the same position with the same knowledge as the officer. The degree of force employed is a factual issue. The trial court's factual findings are entitled to great weight. Kyle v. City of New Orleans, 353 So.2d 969 (La.1977). Picou v. Terrebonne Parish Sheriff's Office, 343 So.2d 306 (La.App. 1 Cir 1977), writ refused 345 So.2d 506 (La.1977). Canter v. Koehring Co., 283 So.2d 716 (La.1973).
Factors to be considered in making a determination of whether the force used was reasonable under the circumstances include: the known character of the arrestee; the risks and dangers faced by the *504 officer; the nature of the offense or behavior involved; the chance of escape if the particular means are not employed; the existence of alternative methods of arrest or subduing the arrestee; the physical size, strength and weaponry of the officers as compared to that of the arrestee; and the exigencies of the moment. Kyle v. City of New Orleans, supra; Picou v. Terrebonne Parish Sheriff's Office, supra.
One of the factors taken into consideration when determining whether a police officer used reasonable or unreasonable force is whether the plaintiff was intoxicated, belligerent, offensive, or uncooperative. See Crawford v. Maryland Casualty Co., 169 So.2d 612 (La.App.2d Cir.1964).
The trial court in oral reasons for judgment transcribed for the record stated:
From the testimony of Officers Morgan and Linnear, this court does not find that unreasonable force was utilized in pushing Mr. Evans back into the chair when he rose out of it in the interview room. The officers are authorized to use reasonable physical force to restrain someone who is in custody. In the ordinary course of events the force used here would have been sufficient to simply reseat Mr. Evans. But, apparently, the chair went out from under him and his head hit the sheetrock wall behind him. It is unfortunate, it is regrettable, but it was brought on entirely by his efforts in coming up out of the chair toward Officer Linnear who had slapped the cigarette out of his hand.
It is very important to note that at this point Mr. Evans was continuing in his belligerent attitude, his use of profanity and racial slurs toward Officer Linnear, and his complete lack of cooperative attitude to either of the officers. He had disregarded instructions specifically. And it is further noteworthy that Officer Linnear at no point had used any force against Mr. Evans until he came up out of the chair and came toward him. Prior to that time Officer Linnear had put up with and accepted without reaction a belligerence, antagonism, cursing and profanity directed at him by Mr. Evans. He had not retaliated in any shape or form. And his only actions toward Mr. Evans were to attempt to restrain him and push him back into the chair.
Mr. Evans, in our opinion, brought that on entirely by his own actions, and Officer Linnear acted within a proper step to restrain Mr. Evans.
Evidence that Ennest Evans was uncooperative, belligerent, loud, and abusive, together with his continued disregard of instructions not to light cigarettes prior to the intoxilizer examination, combined with his coming up out of the chair toward Officer Linnear, as confirmed by Officer Morgan, supports the trial court's finding of reasonableness of the force used. It should be further noted that the interview room in which these incidents took place was very small, restricting Officer Linnear's options. The degree of force, the mere pushing of decedent back into the chair, was minimal. The trial court was entirely correct in its finding that the force used was reasonable. There was no breach of duty by the officer and no basis for liability of the officer or the City by reason of the officer's actions.

DUTY TO PROVIDE MEDICAL CARE
Plaintiff's second theory for holding the City of Shreveport liable for the death of Ennest Evans is that the City, through its employees, failed to provide adequate medical care for Ennest Evans while he was in the City's custody.
A police officer owes a duty to a person while in his custody to protect him from injury and to care for his safety. Griffis v. Travelers Insurance Co., 273 So.2d 523 (La.1973). The officer must do what is reasonable under the circumstances and is liable only for a certain category of risks to which his prisoner is subjected. Griffis, supra. When a person is so intoxicated as to be incapacitated for physical or mental effort, a greater duty is owed to him by the person whose duty it is to exercise care for his safety. Barlow v. City of New Orleans, 257 La. 91, 241 So.2d 501 (1970). This duty does not extend to injuries attributable to his own willful actions. *505 Barlow, supra. Further, the officer is not an insurer of the prisoner merely because the prisoner is intoxicated, Griffis, supra.
In Cobb v. Jeansonne, 50 So.2d 100 (La. App.2d Cir.1951), this court held:
It is the duty of an arresting officer, regardless of the nature of the means employed to accomplish the arrest, and regardless of the nature of the offense for which the arrest is made, so long as the prisoner is in his custody or subject to his control, to see to it that reasonable medical service is provided to such person if and when his mental and/or physical condition discloses the need of such services. 50 So.2d at 106.
In Elsey v. Sheriff of Parish of East Baton Rouge, 435 So.2d 1104 (La.App. 1st Cir.1983), writ denied 440 So.2d 762 (La. 1983) the court held officers were not negligent in failing to provide asthma medication to a prisoner, where he had not requested medication or complained of symptoms prior to his collapse. Likewise, in Burns v. Town of Leesville, 383 So.2d 109 (La.App. 3d Cir.1980), the court held that the defendants were not negligent in failing to provide medical treatment for the plaintiff who did not request medical treatment after falling off a bunk bed while intoxicated. In Abraham v. Maes, 430 So.2d 1099 (La.App. 4th Cir.1983), the court held that officers were not negligent in failing to provide medical care to an arrestee where two paramedics had examined the decedent and found no injuries and where the decedent looked, smelled, talked, and acted as though he was heavily intoxicated.
In this case, Evans was taken for examination by physicians at L.S.U. Medical Center. The physicians found nothing alarming in Mr. Evans condition at that time and released him to be taken to the jail. Like the decedent in Abraham v. Maes, supra, Evans appeared to be intoxicated. He acted, talked, walked, smelled and appeared as though he had been drinking.
Once returned to the jail from the hospital, he complained only of mild headache and dizziness, both symptoms normally seen in recovering from intoxication. Further, the medical testimony indicates that Evans' condition and symptoms would mimic those of an intoxicated individual. Jailer Brumley placed Evans in a cell where his condition could be monitored and he checked on Evans condition every ten to fifteen minutes. While at the jail Evans called his wife who made arrangements for him to be bonded out. Although Evans may have needed some assistance when he was brought down from jail and turned over to the bondsman, his condition was not such that the officers should have been alerted to seek further medical attention. The reasonable course of action was to release him to the bondsman who was acting for the family. His mental and physical condition at that time was not such as to alert the police officers of the necessity of further medical attention.
Under the facts and circumstances presented in this case we cannot say the trial court erred in finding that the officers actions were reasonable. The officers did not breach a duty owed to Mr. Evans. This assignment of error is without merit.
Plaintiff also asks this court to find a duty to provide medical care was owed to Ennest Evans by John Minto, Harry Diebner d/b/a Harry the Bondsman, and F.A. Bonding Company, Inc., and that such duty was breached.
The duty to render aid was discussed in Strickland v. Ambassador Insurance Co., 422 So.2d 1207 (La.App. 1st Cir.1982). There the court said:
It is widely recognized in the field of tort law that the courts do not impose a general duty to come to the aid of one who is in peril, that is, one will not be held legally liable for his inaction even though his assistance could have saved the injured party. There are, however, certain well-delineated circumstances under which a duty is imposed.
There is a legally recognized duty to render assistance in situations where the plaintiff's peril or injury is due to negligence on the part of the defendant or in situations where one begins rescue and *506 thereby discourages others from aiding the injured party....
The courts will also find a duty to aid where there is a special relation between the parties. For example, the courts have found that the following relationships give rise to a duty: carrier and passenger; innkeeper and guest; shopkeeper and business visitor; jailer and prisoner; and school and pupil. W.L. Prosser, The Law of Torts, 340-343 (4th Ed.1971). See also 12 F.F. Stone, Louisiana Civil Law Treatise: Tort Doctrine, 415-416 (1977).
Prosser also states "The defendant is not liable when he neither knows nor should know of the unreasonable risk, or of the illness or injury. He is not required to give aid to one whom he has no reason to know to be ill. He will seldom be required to do more than give such first aid as he reasonably can, and take reasonable steps to turn the sick man over to a physician, or to those who will look after him until one can be brought." Prosser, at 343. Those who will look after him include his family members.
In the case at bar there was no relationship between the decedent and the bondsman which would call for the imposition of a duty to render aid greater than that of an ordinary person. The bondsman did not have "custody" of the decedent. He merely undertook to accommodate the decedent when his wife did not appear at the station. Nothing in the surety agreement established a duty on the part of the bondsman to care for the person of the decedent. The bondsman utilized reasonable steps to attempt to turn Evans over to his family. The bondsman attempted to locate plaintiff by phone, both at the station and at the office. The apparently intoxicated condition of Evans precludes a finding of knowledge of illness or injury on the part of the bondsman. The bondsman breached no duty to Evans.

CONCLUSION
Officer Linnear did not use excessive force in subduing Ennest Evans at the police station. No duty to provide or seek medical care was breached by police officers or the bondsman. Therefore, the judgment of the trial court absolving all defendants from liability in the death of Ennest Evans is correct and is affirmed.
AFFIRMED.
NOTES
[1] LSA C.Cr.P. Art. 220 provides: "A person shall submit peaceably to a lawful arrest. The person making a lawful arrest may use reasonable force to effect the arrest and detention, and also to overcome any resistance or threatened resistance of the person being arrested."