613 So.2d 811 (1993)
Melva FRUGE
v.
The CITY OF NEW ORLEANS, Through N.O.P.D., et al.
No. 92-CA-0246.
Court of Appeal of Louisiana, Fourth Circuit.
February 11, 1993.
Rehearing Denied March 10, 1993.
*812 Lawrence Blake Jones, Ronald L. Wilson, Mark M. Gonzalez, New Orleans, for plaintiff/appellee.
Franz Ziblich, Asst. City Atty., Brett J. Prendergast, Chief of Civ. Litigation, William D. Aaron, Jr., City Atty., New Orleans, for defendants/appellants.
Before SCHOTT, C.J., and BARRY and PLOTKIN, JJ.
BARRY, Judge.
The City of New Orleans appeals a $150,000 tort judgment awarded to Mrs. Melva Fruge, whose diabetic son was arrested for public drunkenness and died while in police custody.
The City argues:
1. It has no duty to a conscious arrestee who did not exhibit any indication of injury or diabetes;
2. If a duty exists, it is only to do what is reasonable;
3. The evidence does not establish a breach of any duty;
4. It was not the cause-in-fact of the fatality;
5. Damages should be reduced by comparative fault.

THE RECORD
Mrs. Fruge alleged that her son was arrested for being drunk in public and was placed in an unattended holding cell at Central Lockup where he died due to a lack of medication for diabetes. Mrs. Fruge claims her son carried a card which identified him as a diabetic. Her petition claims negligence because her son was left in an unattended cell, the police failed to inspect his wallet which contained the identification card noting he was a diabetic, failed to have trained medical personnel available and failed to provide for the care of an arrestee in custody.
The parties offered joint stipulations, one of which states that the officers had probable cause to arrest Clifton Fruge, Jr. for public drunkenness and that the officers would testify according to their reports.
N.O.P.D. Regulation 631-7, Central Lockup Section, Welfare of Arrested Persons, provides that those in need of medical treatment shall not be received by Central Lockup unless the arresting officer has a "refused medical treatment" document from the arrested person. Central Lockup personnel are to immediately notify the Watch Commander if any person is in need of treatment. The Watch Commander shall evaluate the need and if the extent of illness or injury is unknown the arrestee shall be immediately transported to Charity Hospital.
According to the arrest register Clifton P. Fruge was arrested for being drunk on Sunday, February 10, 1980 at 12:15 p.m. and booked at 12:44 p.m. His home address listed on the register was different from the address on his California driver's license. The arrest register had his height, weight, social security number and marital status. It was noted that Mr. Fruge was "hostile at time of booking."
According to the N.O.P.D. incident supplemental report (written at 11:20 p.m.) he was brought into Central Lockup at 12:15 p.m. for public drunkenness. When Mr. Fruge was being booked at about 8:00 p.m. he "started to foam at the mouth" and was transported to Charity Hospital where he died at 10:10 p.m. The hospital Death *813 Summary (written at 11:10 p.m.) shows that he was brought to the hospital at approximately 8:30 p.m. after "being found unresponsive in an isolation cell. According to police records, pt. was a diabetic." On the Autopsy Protocol Mr. Fruge's death is unclassified. The final diagnoses are: (1) marked pulmonary edema; (2) fatty liver; (3) ecchymoses of the scalp; and (4) chronic pancreatitis. The Death Certificate marks the time of death to be 10:30 p.m. and notes the immediate cause to be "marked pulmonary edema" due to a "fatty liver."
Clayton Fruge testified that his brother, Patrick, wore a diabetic bracelet and carried a card in his wallet which stated that he was a diabetic. Before a seizure his brother would foam at the mouth and orange juice or a sugar cube would relieve the distress. His brother took insulin every morning. Clayton Fruge stated that he saw his brother around 7:00 a.m. the morning of his arrest and he was wearing the diabetic bracelet.
Mrs. Fruge testified that her son lived with her and was christened Patrick. His birth certificate read Patrick Clifton Fruge. Although the family called him Patrick, he used Clifton. On the morning of February 10, 1980 she believed her son took his daily insulin shot. He always went to the back room of the house for the injection. Mrs. Fruge saw that her son was wearing his diabetic bracelet that morning. He was diabetic about five years and always carried the I.D. card which read:
I Am a Diabetic. I am not intoxicated. If I am unconscious or my behavior is peculiar, I may be having a reaction associated with diabetes or its treatment. Emergency Treatment: If I am able to swallow, give me sugar in some form candy, syrup, cola or similar beverages that contain sugar, orange juice, etc. Call a doctor or emergency hospital.
The name on the card was Patrick Fruge, Jr. and the address was 431 LeBouef Street, the address on the arrest register.
Mrs. Fruge testified that giving her son orange juice or a sugar cube usually prevented a seizure. She knew her son drank a few beers but he could not drink hard liquor after he developed diabetes. She usually smelled alcohol on his breath on weekends. Mrs. Fruge said that her son was not allowed to drive the tractor the Sunday of his arrest because the supervisor thought he was drunk. Mrs. Fruge contended that her son was beginning to have a seizure and was not drunk.
Dr. Frank Minyard, Coroner, stated that a physician from his office made sick calls every morning at Central Lockup, but weekends were never covered by a nurse or doctor. At the time of the incident there was no nurse present.
Dr. Minyard said a diabetic card carried by an arrestee would set in motion questions to determine the person's health. He said that a diabetic should not drink alcohol, and an arrestee with alcohol on his breath who had a diabetic card should be examined immediately. Dr. Minyard testified that anyone without medical training could respond to the card's instructions.
Dr. Minyard noted that Mr. Fruge's alcohol level had not been tested because it was possible that other liquids had been administered at the hospital. The doctor could not state whether Mr. Fruge would have lived if he had been brought to the hospital at the time of his arrest.
Dr. Samuels, a forensic pathologist, was not aware that Mr. Fruge was a diabetic when he performed the autopsy. He noted the blood glucose level in the hospital record was 3 grams which is in the deathly ill range. Normal is between 90 and 110. Blood was taken at 8:10 p.m. prior to infusion of dextrose and a saline solution at 8:35 p.m.
Dr. Samuels said Mr. Fruge's alcohol level was .01 percent at 8:10 p.m. when he arrived at the hospital. Over seven hours earlier (at the time of his arrest) the alcohol level would have been higher.
Dr. Samuels stated that Mr. Fruge had a moderately enlarged liver which can cause sudden death. Mr. Fruge also had a cardiac arhythmia. A white blood count of 24,000 showed a bacterial infection. Dr. Samuels said that many people live with fatty *814 livers, cardiac problems and infections. The most striking countraindication to life was the very low level of blood sugar. Pulmonary edemna (fluid in his lungs) could have been secondary to a diabetic seizure.
Dr. Samuels could not state with absolute certainty that Mr. Fruge would have survived if he had been brought to the hospital four, five or six hours earlier. He said that the drop in glucose could be attributed to Mr. Fruge not eating for many hours. Alcohol would not drop the glucose level to 3.

TRIAL COURT'S REASONS
The court noted that Mr. Fruge carried the card alerting to the fact that he was a diabetic and that his appearance might be construed as drunkenness. There was no testimony as to Mr. Fruge's appearance at the time of arrest, but Dr. Minyard testified that hyperactivity, rapid breathing, and other diabetic behavior might mimic drunkenness. According to the arrest register, Mr. Fruge was "hostile" at the time of booking. The court found that the police should have been placed on notice that Mr. Fruge's symptoms might be the onset of a diabetic seizure.
The court accepted Dr. Samuels' testimony that Mr. Fruge may have been intoxicated on February 10. However, the Coroner's Office was not able to take a blood sample because of intravenous fluids administered at the hospital.
The court noted that a duty of care is owed to a person in custody. Mr. Fruge was arrested on a Sunday and there was no medical attendant available that day. The court concluded that the City failed in its responsibility by not ascertaining his medical condition and transporting him to a medical facility. There was no evidence as to Mr. Fruge's level of intoxication at the time of his arrest.
The court concluded:
Mr. Fruge's life could have been saved at any point from 12:44 p.m. on February 10th, 1980 had he been given access to orange juice or sugar cubes or anything containing glucose and with those factors I'm of the opinion that the cause of death was the failure on the part of the employees of the City of New Orleans to recognize that he was a diabetic and in the midst of a diabetic seizure and that the alcoholism was of no moment. I'm of the opinion that despite the intoxication at 12:44 p.m., or any time thereafter, the death could have been avoided. And so I'll attribute the cause of death to failure to recognize a diabetic condition and not alcoholism, and will not attribute any negligence to Mr. Clifton Patrick Fruge.

LAW AND ANALYSIS
A police officer owes a duty to a prisoner to protect him from harm and to preserve his safety. The police officer must do what is reasonable under the circumstances. Griffis v. Travelers Insurance Company, 273 So.2d 523 (La.1973). A policeman owes a higher degree of care to an intoxicated person than to one who is more capable of caring for himself. Abraham v. Maes, 430 So.2d 1099 (La.App. 4th Cir.1983); Barlow v. City of New Orleans, 257 La. 91, 241 So.2d 501 (1970). It is the duty of the officer to see that reasonable medical service is provided to a prisoner if and when his physical condition discloses the need of such services. Abraham, 430 So.2d at 1102, quoting Cobb v. Jeansonne, 50 So.2d 100, 106 (La.App.2d Cir.1951).
Factual findings by the trial court are given great deference. Only if those findings are clearly wrong or manifestly erroneous may the appellate court reverse the trial court's determinations. Rosell v. ESCO, 549 So.2d 840 (La.1989).
At the time of his arrest Mr. Fruge had a card in his wallet which identified him as a diabetic. Mrs. Fruge claims that he was wearing a diabetic bracelet. The arrest register noted that Mr. Fruge was "hostile" at booking. He was placed in isolation from 12:44 p.m. until 8:00 p.m. when he was found unresponsive. Mr. Fruge's card stated that his diabetic symptoms might mimic intoxication and he should be given sugar or orange juice. There was no *815 physical examination at the time of arrest or booking and no doctor or nurse at Central Lockup. Apparently no officer inspected or inventoried Mr. Fruge's wallet or personal belongings. He was left in a cell for over seven hours before his condition was discovered.
The police at Central Lockup have a duty to do what is reasonable to keep an arrestee safe from harm. Mr. Fruge's intoxication triggered the need for a higher degree of care by the police. In light of his condition the officers should have monitored him periodically. It would have been reasonable for the police to inventory and list on a record all of Mr. Fruge's belongings. Such a procedure would have alerted the officers to his diabetic problem. The officers breached their duty by placing Mr. Fruge, while in an intoxicated condition, in an unsupervised cell for over seven hours. Mr. Fruge's disability as a diabetic served to heighten the burden on the police to have him medically treated.
The trial court was not manifestly erroneous by finding the City negligent. Mr. Fruge's ingestion of alcohol earlier in the day does not support a basis for comparative negligence. The action and/or inaction by the police constituted negligence which contributed to Mr. Fruge's death.
The judgment is affirmed.
AFFIRMED.
SCHOTT, C.J., dissents with written reasons.
SCHOTT, Chief Judge, dissenting:
I respectfully submit that plaintiff's recovery is barred by the decedent's contributory negligence. The causes of his death were diabetic complications resulting from voluntary intoxication along with the failure of the police to discover his condition and to provide him with medical assistance in time to save his life. Decedent's contributory negligence consisted in his voluntary ingestion of alcohol when he knew or should have known of the potentially disastrous results because of his diabetic condition and his own failure to make his condition known to the police when he was taken into custody.
As to the first instance of his negligence, Dr. Monroe Samuels who performed the autopsy testified that at the time of his arrest decedent's blood alcohol level had to be at least .1. He said, "Anytime a diabetic who is on insulin drinks to a point where his blood alcohol level gets to .1 I think he's in potential difficulty." According to decedent's mother, the appellee, he knew he wasn't supposed to drink, but did so anyway and tried to hide it from her. Under these circumstances he was at fault and his fault contributed to his death.
This case is clearly distinguishable from Barlow v. City of New Orleans, 257 La. 91, 241 So.2d 501 (1970) in which the court held the city liable for injuries sustained by a drunken prisoner whom the police locked in the back of a police car and left unattended when a fire started in the car. The case turned on the duty owed to the prisoner to keep him safe and to protect him from injury not attributable to his own willful acts. This is the same principle discussed in Abraham v. Maes, 430 So.2d 1099 (La. App. 4th Cir.1983); Burns v. Town of Leesville, 383 So.2d 109 (La.App. 3rd Cir.1980); and Griffis v. Travelers Insurance Company, 273 So.2d 523 (La.1973). In each of these cases the issue was the same, whether the breach of the jailer's duty to an intoxicated prisoner was the cause of the harm suffered by the prisoner. In each case the operative facts causing the harm occurred within the framework of the incarceration of a drunken prisoner. In the present case one of the operative facts which caused decedent's death took place long before his incarceration and before he became intoxicated. His death was not alone due to the fact that the police failed to protect a hapless drunken prisoner from his own wrongdoing, but it was also due to his own negligence in drinking alcohol knowing it could have serious consequences because he was a diabetic on insulin.
Additionally, when he was booked by the police, decedent had enough presence of mind to give his address which was different *816 from the address on his driver's license along with other personal information. He had a duty to tell the police he was a diabetic or to voluntarily show them the card in his wallet and he breached that duty.
Unfortunately, this incident took place before the effective date of Act 431 of 1979 which provided for comparative negligence as opposed to contributory negligence being a bar to any recovery. However, decedent's negligence is clear and acted as a complete bar to plaintiff's recovery. I would reverse the judgment and dismiss plaintiff's suit.