282 So.2d 730 (1973)
Delos C. DANCER, III
v.
State of Louisiana, Through the DEPARTMENT OF CORRECTIONS.
No. 9440.
Court of Appeal of Louisiana, First Circuit.
June 29, 1973.
Standford O. Bardwell, Jr., Asst. Atty. Gen., and William J. Guste, Jr., Atty. Gen., Baton Rouge, for appellant.
Garic K. Barranger, Covington, and Joseph S. Russo, New Orleans, for appellee.
Before SARTAIN, BLANCHE and WATSON, JJ.
BLANCHE, Judge.
Plaintiff, Delos C. Dancer, III, was authorized to file this suit against the defendant, State of Louisiana, through the Department of Corrections, by House Concurrent Resolution No. 55 of the 1969 Regular Session of the Louisiana Legislature. While plaintiff was an inmate of Louisiana State Penitentiary at Angola, Louisiana, he suffered an injury to his right leg and ankle when playing in a game of football organized by prison authorities. The specific injuries were the severance of the deltoid ligament and a break of the right fibula or ankle bone. After plaintiff was injured, he was taken to the Angola General Hospital where he received medical treatment. It is alleged that while plaintiff was in the hospital at Angola the defendant did not provide plaintiff with reasonable medical services and as a result thereof the injury to his right ankle was aggravated, with the occurrence of residual disability.
*731 The trial judge held that the evidence supported a finding that the defendant failed to provide plaintiff with reasonable medical services and awarded plaintiff damages in the sum of $16,000. Whether that finding is supported by a preponderance of the evidence and whether the award of $16,000 to plaintiff as compensation for damages suffered by him is excessive are the issues on appeal. We affirm.
The trial judge has favored us with a written opinion wherein he has made certain factual findings and the conclusions to be drawn therefrom. His assistance in this regard makes our disposition of the matter on appeal an easy task, and we take the liberty of quoting from his opinion with approval as follows:
"The State of Louisiana, through the Department of Corrections, is defendant on the theory that the State has a duty to provide reasonable medical attention to inmates pursuant to La.R.S. 15:760, 15:859 and 15:831.
"Testimony revealed that immediately after sustaining the injury plaintiff was carried by stretcher to the prison hospital. Here, his ankle was x-rayed by inmate-technician, Robert Colley. Colley had no formal education or training as an x-ray technician and learned his trade from Dr. B. T. Hickman, a radiologist, who came to the prison hospital on Sundays. The testimony is vague as to whether or not Dr. Hickman was at the hospital and read plaintiff's x-rays on the day in question. However, Dr. Hickman's report on the x-rays, dated March 10, 1968, is part of plaintiff's hospital record. Plaintiff was admitted to the hospital; his foot and leg were elevated; he was given Darvon 65 mg. for pain and Varidose tabs for four days; his ankle was packed in ice to reduce swelling; a cast was ordered when the swelling subsided. These treatments were ordered by W. D. Martin, a freetechnician. This job specification under Civil Service requires at least one year's work in a hospital or some medical field.
"Plaintiff remained in the hospital from March 10, 1968 through March 21, 1968. During this period, the medical director, Eduardo Rodriguez, supervised plaintiff's care. (See hospital record: Doctor's Order Sheet.) Rodriguez, a Cuban refugee since the early 1960's when Castro came to power, was not licensed to practice medicine in Louisiana nor did he have a Louisiana institutional permit at the time. However, he had been licensed to practice medicine in Cuba; and, subsequently did receive a Louisiana institutional permit. Rodriguez is now deceased. Medicines and drugs, temperature, pulse, respiration and general observations were administered by various inmates. (See hospital record: nurses notes, progress notes.)
"A full leg cast was applied on March 19, 1968 by Odell Causey, an inmate technician, assigned to the hospital emergency room. Odell Causey had no formal training or education in casting, only his experience at the prison hospital acquired from another inmate.
"Plaintiff was discharged on March 21, 1968. Plaintiff returned to the hospital on March 27, 1968, April 15, 1968, and May 13, 1968. On these visits the cast was removed, x-rayed and re-applied. Testimony of Causey who applied each of these casts, revealed that plaintiff's ankle was still swollen and bruised. Plaintiff also made other trips to the hospital on March 25, 1968, April 22, 1968, April 29, 1968, May 14, 1968 and May 15, 1968.
"It was stipulated between counsel that John J. Kelly, prison warehouse supervisor, would testify that plaintiff's ankle remained swollen after the cast was removed the third time on May 13, 1968, and that it was necessary for him to personally petition prison authorities for plaintiff's transfer to Charity Hospital in New Orleans. Plaintiff worked in *732 the warehouse and Kelly was his supervisor.
"On May 27, 1968, plaintiff was re-admitted to the hospital and sent to Charity Hospital in New Orleans. Plaintiff remained at Charity Hospital in New Orleans from May 28, 1968 to June 11, 1968. While there, Dr. David Wisdom performed surgery for open reduction and internal fixation of the right ankle. Postoperative diagnosis revealed fracture of the distal aspect of the right fibula plus rupture of the deltoid ligament.
"Plaintiff was returned to Angola General where he remained at bed rest until July 18, 1968, when he was discharged to light duty. Plaintiff was scheduled to return to Charity on June 26, 1968, then again on July 10, 1968, but was not sent for unexplained reasons. He was returned to Charity Hospital on August 9, 1968 where he underwent surgery for the removal of the screw in his right ankle. He returned to Angola General on August 13, 1968, and was discharged August 14, 1968.
"It was stipulated between counsel that the state has a duty to provide reasonable medical treatment to inmates pursuant to La.R.S. 15:760, 15:859 and 15:831. La.R.S. 15:760 provides for the establishment of the prison hospital with necessary equipment and attendants; La.R.S. 15:859 mandates the superintendent to appoint physicians who shall visit the convicts at least 3 times a week and gives him power to call in local physicians in case of emergency; La.R.S. 15:831 mandates the director of corrections to establish and prescribe standards for health, medical and dental services for each institution; La.R.S. 15:831 also gives authority for the transfer of convicts to medical facilities outside the institution where deemed necessary.
"Testimony revealed that there were no physicians available to inmates at times and that prison authorities merely did the best they could with the personnel available. During the time of plaintiff's confinement, the personnel available were two unlicensed physicians, Rodriguez and Martinez, various free technicians hired through State Civil Service, and numerous inmate technicians. Furthermore there were no established medical health standards or procedures in effect at Angola. It is clear that the state breached its duty to provide reasonable medical treatment to inmates under these circumstances.
"Did the breach of this duty cause harm to the plaintiff? This question must be answered in the affirmative. Especially pertinent is the testimony of Lynn R. Hamilton, M. D. of the Ochsner Clinic. Plaintiff's injury was the fracture of the distal aspect of the right fibula. Dr. Hamilton testified that there were two conceivable methods of treating this fracture, i. e., closed reduction or open reduction with internal fixation. He agreed that perhaps some of his colleagues might try closed reduction first, although he personally would have used open reduction. Testimony crucial to this case is the extent of aggravation caused plaintiff's injury because of the delay of some 12 weeks and the improper casting of the ankle. Dr. Hamilton testified that plaintiff's ankle was cast down at an angle of 150 at Angola General Hospital. He testified that while some fractures are treated with the foot down at a slight angle, ankle fractures are not among them. He concluded that the casting technique used on plaintiff was improper and would be condemned by all Louisiana doctors. Dr. Hamilton concluded that the improper casting over the 12 week period resulted in an increase in the overall partial, permanent disability in plaintiff's foot because it prolonged total immobilization time. He testified that if the cast had been improperly applied but then surgery had been carried out in 4-6 days after the injury, the total immobilization time *733 would not have been significantly prolonged. He concluded that the 12-week prolongation of total time of immobilization combined with improper casting aggravated plaintiff's injury to the extent that it increased his percentage of disability.
"As to standards of accepted practice, Dr. Hamilton testified that a physician must first reduce the fracture and apply the initial cast. The physician is responsible for molding the initial cast, not a plaster technician. He felt that a general practitioner in Louisiana would have recognized within a week that closed reduction was not working in plaintiff's case and would have proceeded with open reduction and internal fixation.
"Based on the medical testimony of Dr. Hamilton, it is clear that plaintiff's injury was improperly treated according to accepted medical standards and that said treatment increased plaintiff's disability." (Written Reasons for Judgment, Record, pp. 35-39)
The foregoing review of the evidence by the trial judge supports his finding that the defendant failed to afford plaintiff with reasonable medical services and as a result thereof caused plaintiff's injuries.
As contemplated by the foregoing statutes[1] referred to in the trial judge's opinion and those which regulate the practice of medicine in the State of Louisiana,[2] as well as from the evidence adduced at trial, reasonable medical services include at least the following:
(1) The establishment of standards for health, medical and dental services, including diagnosis, treatment and care of inmates both while confined to the hospital or as outpatients of the hospital.
(2) The establishment of standards and guidelines as to the types of treatment which may be administered as first aid by inmates assigned as medical personnel.
(3) The establishment of standards and qualifications of personnel, whether inmate or civilian, to administer first aid.
(4) The establishment of standards and guidelines for the treatment of inmates at facilities outside the institution, taking into account the competency and adequacy of the institution's facilities and personnel.
(5) The establishment of standards and guidelines as to the type of medical treatment that may be administered by unlicensed inmates and civilian attendants.
(6) The establishment of standards and guidelines as to the supervision of *734 medical treatment by unlicensed inmates and civilian attendants.
(7) The diagnosis and treatment of inmates by physicians and surgeons duly qualified and licensed in accordance with the laws of the State of Louisiana to practice medicine in the State of Louisiana.
The trial judge's award of $16,000 to plaintiff was not an abuse of his great discretion. LSA-C.C. art. 1934(3); Lomenick v. Schoeffler, 250 La. 959, 200 So. 2d 127 (1967); Ballard v. National Indemnity Company of Omaha, Neb., 246 La. 963, 169 So.2d 64 (1964); Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963); Pepper v. Glover, 241 So.2d 269 (La.App. 1st Cir. 1970). Those matters which he took into consideration in assessing damages for plaintiff's personal injuries are supported by the evidence and are set forth in his opinion as follows:
"In assessing damages, the court considers the 12 weeks of pain plaintiff suffered at Angola General while subjected to improper treatment. Also, as Dr. Hamilton testified, had plaintiff undergone surgery initially the pain of the break and the pain of the surgery would have been concurrent, rather than consecutive. Plaintiff has a permanent partial disability of 20% in his ankle. This disability results in difficulty in locomotion on uneven ground which precludes any active sport or outdoor occupation, inability to climb without danger and difficulty in stooping or squatting because of the ankle motion required. * * *" (Written Reasons for Judgment, Record, p. 39)
For the above and foregoing reasons, the judgment of the trial court is affirmed. Defendant is taxed with all costs of these proceedings as may legally be assessed against the State of Louisiana.
Affirmed.
NOTES
[1] LSA-R.S. 15:760 reads as follows:

"Where large numbers of prisoners are confined the proper authorities in charge shall provide hospital quarters with necessary arrangement, conveniences, attendants, etc."
LSA-R.S. 15:859 reads as follows:
"The superintendent shall appoint physicians who shall visit the convicts at least three times a week. Their compensation shall be determined by the superintendent.
"In cases of emergency the officers in charge of the convicts may call in local physicians whose compensation shall be determined by the superintendent."
LSA-R.S. 15:831 reads as follows:
"The director of corrections shall establish and shall prescribe standards for health, medical, and dental services for each institution, including preventive, diagnostic, and therapeutic measures on both an out-patient and a hospital basis, for all types of patients. An inmate may be taken to a medical facility outside the institution when deemed necessary by the director. Added by Acts 1968, No. 192, Section 1."
[2] LSA-R.S. 37:1261 et seq., provides for the licensing and qualifications of physicians and surgeons and requires the Louisiana State Board of Medical Examiners to examine all applicants for the practice of medicine and for the issuance of certificates to those who pass such examination.