333 So.2d 281 (1976)
Mrs. Jacklyn Glossop MOREAU, Individually, and as Tutrix of her minor children, Michael Moreau and Thomas F. Moreau
v.
STATE of Louisiana, Through the DEPARTMENT OF CORRECTIONS.
No. 10754.
Court of Appeal of Louisiana, First Circuit.
May 24, 1976.
*282 Wm. J. Guste, Jr., Atty. Gen., Robert C. Funderburk, Jr., and Thomas K. Kirkpatrick, Asst. Attys. Gen., Baton Rouge, for appellant.
George H. Jones and Frank J. D'Amico, New Orleans, for appellees.
Before ELLIS, BLANCHE and LOTTINGER, JJ.
BLANCHE, Judge.
The plaintiffs-appellees, Mrs. Jacklyn Glossop Moreau, individually, and as tutrix of her minor children, Michael Moreau and Thomas F. Moreau, Jr., sued the defendant-appellant, State of Louisiana, through the Department of Corrections, for failing to provide adequate medical care to her deceased husband, Thomas F. Moreau, who was stabbed by an unknown assailant while incarcerated at Louisiana State Penitentiary.
The trial judge found negligence on the part of defendant and stated that New Orleans Charity Hospital, which provided medical care to the deceased, was also negligent. However, as to the hospital, his statement was gratuitous, for they were not a party to the suit.
Mrs. Moreau, individually, was awarded the sum of $26,306. Judgment was also rendered in favor of Mrs. Moreau as tutrix of her minor child, Michael Moreau, in the sum of $7,500. As tutrix of their posthumous child, Thomas Moreau, Jr., she was awarded the sum of $5,000. All judgments were to bear legal interest from date of judicial demand until paid. Two hundred fifty dollars was granted for the expert witness fee of Dr. Frank Minyard.
On December 6, 1968, at approximately 1:30 A.M., Thomas F. Moreau was stabbed numerous times about the chest and body by an unknown assailant while he was sleeping in his bunk at the Louisiana State Penitentiary, Angola, Louisiana.
Responding to Moreau's cries for help, prison officers rushed him to the prison hospital. He remained there for appoximately one and a half hours during which time the only medical attention he received was sutures to close the wounds and an injection of demerol to relieve pain.
Although the record reflects that a doctor was employed by Angola at the time of the incident, he was not called to attend Moreau. The only medical person to treat the injured inmate was James A. Kimble, technician on duty the night of the incident.
Moreau's condition was recognized as serious, and it was decided to transport him to New Orleans Charity Hospital, approximately 150 miles distant. The record does not reflect who made the decision to send the patient to New Orleans.
At approximately 6:00 A.M. the ambulance arrived at Charity, at which time Moreau's outward signs appeared to be stable.
One thousand cubic centimeters (approximately two pints) of blood were extracted from his chest, but due to the nature of the wounds, he continued to bleed and the chest filled again with blood. As a result, his vital signs became critical at approximately 10:00 A.M.
At this turn of events, an emergency operation was undertaken, commencing at 12:10 P.M. His vital signs stabilized somewhat during and after the operation, but the patient subsequently expired at 12:35 A.M. on on December 7, approximately twenty-three hours after the attack.
The defendant has appealed, contending that in view of the emergency situation, the personnel of the prison breached no duty to the decedent. It argues that the trial judge concluded that the defendant was liable by relying too heavily upon the testimony of Dr. Minyard, the only medical expert to appear in the case. Alternatively, the defendant contends that the negligence of Charity Hospital was a superseding, intervening cause of death and as such *283 the Department of Corrections should be relieved of liability. Furthermore, it contends the award was too high under the facts of this case.
The plaintiffs-appellees have answered the appeal, seeking additional compensation.
In support of their case, the plaintiffs elicited the expert medical testimony of Dr. Minyard, who was Coroner for the City of New Orleans at the time of trial. Dr. Minyard testified that in his practice he had treated several hundred cases involving stab wounds of the chest similar to those suffered by the decedent, and he concluded that the cause of this death was irreversible shock due to loss of blood.
He opined that Moreau went into shock immediately after the stabbing since at least two pints of blood were lost into the chest cavity. Because nothing was done to retard the effect of that blood loss until the patient reached Charity Hospital, the doctor concluded that the defendant had rendered inadequate medical care.
Judging from their treatment of the deceased, the personnel at Angola did not consider the patient to be in shock and, accordingly, did not so treat him. However, Dr. Minyard stated that in a healthy twenty-two year old male, as was the decedent, signs of shock do not appear immediately. In the light of the foregoing and in view of the obvious severity of the wounds, Dr. Minyard was of the opinion that the defendant's personnel committed grave error by failing to immediately treat this patient for shock.
To retard the effects of shock, Dr. Minyard argued that at the very minimum the victim should have immediately received dextran, a blood expander, to maintain an adequate volume of blood in the body and oxygen to facilitate the oxygen-carrying capability of the remaining blood. These procedures would have mechanically slowed the shock process until it could be irreversibly stopped by surgical procedure.
He also felt that preliminary blood typing should have been done at Angola so that whole blood could have been administered upon arriving at a medical facility. He opined that the treating doctors at Charity were probably slowed by the fact that the patient's blood type had to be calculated. None of the foregoing procedures were attempted by the defendant's personnel.
By its failure to perform these procedures, Dr. Minyard concluded that the defendant wasted approximately four hours of critical time, the interval between Moreau's first treatment at Angola and his arrival at Charity. He was of the opinion that due to that loss of time the decedent's organs were placed in a state of irreversible shock which ultimately resulted in his death.
The conclusions of this expert were unrebutted by the defendant.
In view of Dr. Minyard's testimony, the only medical evidence presented at trial, we have no hesitancy in finding that the action of the defendant's employees was a substantial factor and cause in fact of Moreau's death. Dixie Drive-It-Yourself System v. American Beverage Company, 242 La. 471, 137 So.2d 298 (1962).
The next question is whether or not the actions of the defendant's personnel were a breach of duty owed to the decedent. The defendant has certain statutory duties to provide medical care to inmates. LSA-R.S. 15:760 provides:
"Where large numbers of prisoners are confined the proper authorities in charge shall provide hospital quarters with necessary arrangement, conveniences, attendants, etc."
LSA-R.S. 15:831 provides:
"The director of corrections shall establish and shall prescribe standards for health, medical, and dental services for each institution, including preventive, diagnostic, *284 and therapeutic measures on both an outpatient and a hospital basis, for all types of patients. An inmate may be taken to a medical facility outside the institution when deemed necessary by the director. Added by Acts 1968, No. 192, § 1."
LSA-R.S. 15:859 provides:
"The superintendent shall appoint physicians who shall visit the convicts at least three times a week. Their compensation shall be determined by the superintendent.
"In cases of emergency the officers in charge of the convicts may call in local physicians whose compensation shall be determined by the superintendent."
The foregoing is statutory authority to impose on the defendant the duty of providing reasonable medical care for those persons incarcerated in our state prisons. See Dancer v. Department of Corrections, 282 So.2d 730 (La.App. 1st Cir. 1973).
From our review of the evidence, we have no difficulty in finding, as did the trial judge, that the defendant breached its duty to the deceased by not providing him with adequate emergency medical treatment.
The risk that the decedent would suffer harm because of the defendant's inadequate medical care was well within the scope of the duty. The duty does not require the defendant to maintain a full hospital at the site of each of its prisons in order to protect the inmates against every known medical risk. However, the duty does encompass the risk that occurred herein, that is, that an inmate would be injured and require life-saving medical attention.
In an attempt to relieve itself of liability, the defendant argues that the conduct of the staff at Charity Hospital was an intervening and superseding cause in Moreau's death.
The trial judge found that Charity Hospital was negligent in caring for the decedent but that such negligence concurred with that of the defendant to produce the harm. The facts of this case do not support defendant's contention that the hospital's negligence was a superseding cause in this death. Therefore, even assuming arguendo that Charity Hospital was negligent, that negligence would not relieve the defendant of liability in the instant case.
As noted by the trial judge, the defendant might have joined Charity Hospital as a co-defendant and thereby relieved itself of at least a portion of the financial burden of this death. However, it chose not to do so, and, therefore, it was not error for him to cast the defendant in judgment for the full amount of damages.
In their answer to the appeal, plaintiffs seek additional damages for the decedent's pain and suffering during the twenty-three hours he survived after the stabbing. It is clear from the record that the trial judge inadvertently omitted this award. Under the facts of this case, we are of the opinion that an award of $2,500 would be appropriate.
The remaining awards are within the great discretion accorded the trial judge in such matters and will not be disturbed on appeal.
For the above and foregoing reasons, the judgment in favor of plaintiff, Mrs. Jacklyn Glossop Moreau, individually, and as tutrix of her minor children, Michael Moreau and Thomas F. Moreau, Jr., is amended by the addition of $2,500. In all other respects, the judgment of the trial court is affirmed. The costs of this appeal are to be borne by defendant-appellant.
AMENDED, AND AS AMENDED, AFFIRMED.