435 So.2d 1104 (1983)
Marie Shelmire ELSEY
v.
The SHERIFF OF the PARISH OF EAST BATON ROUGE, et al.
No. 82 CA 0938.
Court of Appeal of Louisiana, First Circuit.
June 28, 1983.
Rehearing Denied August 23, 1983.
Writ Denied November 4, 1983.
*1105 James C. Ferguson, Baton Rouge, for plaintiff-appellant Marie Shelmire Elsey.
Frank J. Gremillion, Asst. Parish Atty., Baton Rouge, for defendant-appellee City of Baton Rouge and Parish of East Baton Rouge.
Mary Olive Pierson, Baton Rouge, for defendant-appellee Sheriff J. Al Amiss.
Before LOTTINGER, COLE and CARTER, JJ.
CARTER, Judge.
This is a wrongful death action. Plaintiff, Marie Shelmire Elsey, appeals the judgment of the trial court in favor of the defendant, Sheriff of the Parish of East Baton Rouge.[1]
On May 15, 1980, plaintiff's thirty-two year old son, Edward Elsey, Jr. (Flap), was an inmate in the East Baton Rouge Parish Prison at Ryan Airport. Elsey had been incarcerated in the parish facility on numerous occasions and was known to suffer from chronic asthma. Early on the morning of May 16, 1980, Flap was pronounced dead at the Earl K. Long Memorial Hospital. An autopsy revealed that the cause of death was status asthmaticus.
Much of the testimony at trial concerned whether Flap requested and was denied his prescribed medication (Tedral and Primatine Mist) by prison deputies. Three inmates testified that on May 15, 1980, the deceased requested medication numerous times, but, despite his requests, was unsuccessful in obtaining any medication. They further testified that Flap was in physical distress and was having difficulty breathing for some 15 hours before medical assistance was given.
To the contrary, the shift supervisor and two officers supervising the wing in which Flap was located denied that such requests for medication had been made. Corporal Vessell, who worked the midnight to 8:00 a.m. shift on the morning of May 16, 1980, testified as follows:
"Q Prior to May 16, 1980, did Mr. Elsey ever ask you for any primatine?
A Negative.
Q He didn't make any complaints to you whatsoever about shortness of breath or difficulty in breathing?
A No. The only thing he said to me was right around the time the storm came up and that was that he wanted something to make his bowels move. He wanted me to see could I get him something to make his bowels move, namely, mineral oil.
Q When you started the shift on May 16th and you walked the line, did you notice Edward Elsey?
A Yeah, I spoke to him several times when I passed by, like I normally do everytime I work.
Q And he appeared fine to you?
A He seemed to be okay to me. He didn't complain about anything.
Q He was moving around in his cell as he was talking?
A He was talking to the other inmates and smoking cigarettes.
Q This was around midnight?
A Around midnight.

*1106 Q He at no time asked you directly for his primatine?
A At no time did he ask me for any medicine other than early the next morning for mineral oil.
Q He did not appear to have shortness of breath or difficulty breathing when you came on your shift on May 15th?
A I didn't notice any unusual activities that was going on with Edward Elsey at that time."[2]
The prison medicine lists showed that Flap had received Tedral twice on May 15, 1980, the latest dosage being given at 2:00 p.m. on May 15. All the officers testified that Flap requested mineral oil for constipation at approximately 4:40 a.m. on May 16, 1980, and that upon returning to the cell with the laxative, they discovered that Flap had collapsed. According to the officers, it was at that time they became aware that Flap was having difficulty breathing.
Upon removing Flap from the prison cell and deciding on treatment, officers transported Flap to the Earl K. Long Memorial Hospital for care. The emergency room staff at the hospital facility, despite resuscitative therapy, was unable to save Flap's life and pronounced him dead approximately twenty-five minutes after his arrival.
The knowledge of Flap's death initiated an investigation by Detective Randy Keller who testified that he interviewed some 14 inmates at the parish prison. His investigation, according to his testimony, revealed that although Flap had requested medication for asthma on the preceeding day, he had received medicine at approximately 2:00 p.m. on May 15, 1980, and had made no further requests or complaints.[3]
In determining that Flap died of severe asthmatic damage or injuries to his lungs, pathologist, Dr. James A. Freeman, testified that certain factors, viz., the stormy weather, the high pollen content in the air, the advanced stage of Flap's asthma, and the fact that Flap smoked, contributed to the severity of Flap's condition. Dr. Freeman also testified that intravenous medication or prescription drugs through aerosol were the only things which could have helped Flap. Dr. Freeman further testified that it is possible to have the best of therapy and still die of an asthmatic attack.
Plaintiff alleges that the defendant has breached the duty owed to the decedent, as an inmate, to provide adequate medical treatment.
The standard of care imposed upon the Department of Corrections in providing for the medical needs of inmates is that those services be reasonable. Brown v. State, 392 So.2d 113 (La.App. 1st Cir.1980); Moreau v. State, Department of Corrections, 333 So.2d 281 (La.App. 1st Cir.1976); Dancer v. Department of Corrections, 282 So.2d 730 (La.App. 1st Cir.1973).
The statutory authority imposing the duty is found in LSA-R.S. 15:760 which provides:
"Where large numbers of prisoners are confined, the proper authorities in charge shall provide hospital quarters with necessary arrangement, conveniences, and attendance, etc."
The general statutory scheme of LSA-R.S. 15:761 (repealed; see now R.S. 15:751) was that the duty imposed under LSA-R.S. 15:760 shall apply to all jails, prisons, and lockups located in Louisiana.
This duty to provide reasonable medical care for prisoners does not require the maintenance of a full hospital at the site of each prison in order to protect an inmate against every medical risk, but does encompass the risk that an inmate will become sick or be injured and require life-saving medical attention. Moreau v. State, Department of Corrections, supra.
*1107 The resolution of this issue in the instant case is basically a question of the credibility of witnesses who testified. The trial judge, in oral reasons, found that the testimony of the defendant's witnesses (the Sheriff's deputies) was more credible than the testimony of the plaintiff's witnesses (the prison inmates).
Based upon the aforementioned findings of fact, the trial court found plaintiff had failed to establish a breach of duty by the Sheriff.
Factual findings by the trial court are entitled to great weight and will not be disturbed on appeal absent a finding of manifest error. Canter v. Koehring Company, 283 So.2d 716 (La.1973). We cannot say in this case that the trial court erred as a matter of law in deciding that the defendant did not breach the duty owed to the decedent.
Therefore, the judgment of the trial court is affirmed. Appellant is to pay all costs of this appeal.
AFFIRMED.
NOTES
[1] Plaintiff's petition also named as defendants the City of Baton Rouge and Parish of East Baton Rouge. The trial court, however, granted a directed verdict in favor of the City-Parish government and dismissed plaintiff's complaint against the City of Baton Rouge and the Parish of East Baton Rouge.
[2] The other officers who testified gave substantially similar accounts of Flap's conduct preceeding his death.
[3] The three inmates who testified at trial stated that Flap requested and was denied medication; however, the reports made by them to Detective Keller immediately after Flap's death reveal that no such requests or denials were reported.