639 So.2d 897 (1994)
Bernice Brown, Wife of/and Leroy A. BROWN, Sr.; Leroy A. Brown, Jr., and Clinton Brown
v.
Harry LEE, in his capacity as Sheriff of Jefferson Parish, et al.
No. 94-CA-104.
Court of Appeal of Louisiana, Fifth Circuit.
July 13, 1994.
Ronald S. Hagan, Laurie E. Rolling, Gretna, for plaintiffs-appellees.
Franz L. Zibilich, Lee, Martiny & Caracci, Metairie, for defendants-appellants.
Before KLIEBERT, GAUDIN and GRISBAUM, JJ.
KLIEBERT, Chief Judge.
This is a suit against Harry Lee, Sheriff of Jefferson Parish, for the wrongful death of Frank Brown, hereinafter Frank. Frank was arrested and died while in the Sheriff's custody at the Eastbank lockup. Plaintiffs herein are his parents, Beatrice and Leroy Brown, and his two brothers, Leroy, Jr. and Clint Brown. Following a bench trial, judgment was rendered in favor of Mr. and Mrs. Brown in the amount of $100,000.00 each, plus costs and legal interest. The Sheriff perfected this appeal alleging the trial court erred in finding him liable. Plaintiffs answered the appeal seeking additional damages. For the reasons that follow, we reverse the finding of liability against the Sheriff and dismiss plaintiffs' petition.
*898 Frank Brown was arrested on charges of disturbing the peace by being drunk in public at about 7:00 a.m. on October 28, 1989. Arresting Officer Eugene Morse testified Frank was in the middle lane of the three lanes of traffic on Jefferson Highway, spinning around, genuflecting, sweating, and grimacing. When approached, Officer Morse detected the odor of alcohol on Frank's breath. Frank stated he was walking home from Southside, a Fat City bar.
Frank was arrested and transported to the Eastbank lockup. While en route, Morse asked if he had used the drug Ecstasy. Frank denied any drug use. Once at the lockup Frank saw an old friend, Officer Marlo Bruno, and asked him to confirm that he did not use drugs.
Although Frank continued to appear "hyper" and sweat profusely, he maintained he was alright and attributed his condition to being afraid and nervous about going to jail. All questions asked of Frank were met with appropriate responses. While in the searching cubicle (cell) Frank told Officer Michael Murphy of his back problem. Medical attention was offered for the back condition and refused.
During the booking, the officers followed their usual procedure, including the filling out of a medical questionnaire. The officers noted Frank was intoxicated but was not in need of medical care. Because he appeared to act like the average drunk brought to jail, Frank was processed and placed in a cell instead of being provided with medical care as the medical screening form indicates should be done.
Brown was placed in a cell and held due to an outstanding warrant from the City of Kenner. The cell was in plain view to most areas of the jail area, including the booking station. Jail personnel testified they made periodic checks of all prisoners; however, there was no log or documentation confirming this.
At about 9:15 a.m., Frank spoke to his brother, Clint, on the telephone. Clint testified Frank was breathing heavily and sounded nervous but said he was O.K. Due to Frank's temper, Clint was concerned that Frank would do or say something to get him in more trouble with the police; however, he felt he sufficiently calmed Frank down before their conversation ended. Mrs. Brown testified that following this conversation, they did not feel there was anything seriously wrong with Frank.
George Monk, a trustee at the jail, arrived at approximately 6:45 a.m. the morning of Frank's arrest. He testified that he maintained constant visual contact with Frank about 75%-80% of the time. He confirmed Frank's erratic behavior and, at about 11:30 a.m., he notified sheriff's personnel that Frank appeared to need assistance. Frank was checked by officers and found to be dead.
An autopsy was performed and the cause of death listed as an overdose[1] of Methylene-dioxymethamphetamine (MDMA or Ecstasy). The Brown family sued alleging the Sheriff's office was negligent in monitoring its prisoners and in failing to provide adequate medical treatment to prisoners. They allege the failure to provide medical care resulted in a decreased chance of Frank Brown's survival, obligating the Sheriff's office to pay damages.
To prevail on a negligence claim under La.Civ.Code arts. 2315[2] and 2316[3], a plaintiff *899 must prove five separate elements: (1) the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant failed to conform his conduct to the appropriate standard (the breach of duty element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and, (5) actual damages (the damages element). Fowler v. Roberts, 556 So.2d 1, 4 (La.1989); Roberts v. Benoit, 605 So.2d 1032 (La.1992).
In Fruge v. City of New Orleans, 613 So.2d 811 at page 814 (La.App. 4th Cir.1993), the court set out a police officer's duty or obligation as follows:
"A police officer owes a duty to a prisoner to protect him from harm and to preserve his safety. The police officer must do what is reasonable under the circumstances. Griffis v. Travelers Insurance Company, 273 So.2d 523 (La.1973). A policeman owes a higher degree of care to an intoxicated person than to one who is more capable of caring for himself. Abraham v. Maes, 430 So.2d 1099 (La.App. 4th Cir. 1983); Barlow v. City of New Orleans, 257 La. 91, 241 So.2d 501 (1970). It is the duty of the officer to see that reasonable medical service is provided to a prisoner if and when his physical condition discloses the need of such services. Abraham, 430 So.2d at 1102, quoting Cobb v. Jeansonne, 50 So.2d 100, 106 (La.App. 2nd Cir.1951)."
In cases such as this, the particular facts are highly important to determine what is reasonable action by the police officer. This requires logic, reasoning and employment of policy decisions to determine whether liability should be imposed under the particular factual circumstances presented. Regardless if stated in terms of proximate cause, legal cause or duty, the scope of the duty inquiry is ultimately a question of policy. Roberts, supra.
In determining the limitation to be placed on liability for a defendant's substandard conducti.e., whether there is a duty-risk relationshipwe have found the proper inquiry to be how easily the risk of injury to plaintiff can be associated with the duty sought to be enforced. Restated, the ease of association inquiry is simply: "How easily does one associate the plaintiff's complained-of harm with the defendant's conduct? ... Although ease of association encompasses the idea of foreseeability, it is not based on foreseeability alone." Absent an ease of association between the duty breached and the damage sustained, we have found legal fault lacking. (Citations Omitted. id. at 1045)
Likewise here, we do not find the relationship between the Sheriff's activities and the injury to be substantial. Whether the amount of drugs in Frank's system was sufficient to cause death by overdose or whether Frank had a hypersensitive reaction which caused his death will never be known. However, expert testimony indicated that Frank's behavior was typical of one on Ecstasy. Expert testimony indicated Ecstasy intoxication is rarely fatal. Further, Frank's family felt there was nothing seriously wrong with Frank after Clint's telephone conversation with him even though Clint found he was breathing heavily and sounded nervous two hours after his arrest. Thus, it is impossible to say that it was more probable than not that "but for" the Sheriff's conduct, Frank's death would not have happened.
The question which we must answer is not whether Frank would have had a greater opportunity to survive if he was provided medical treatment but whether the Sheriff's office had a duty to obtain medical treatment for an arrestee whose actions were consistent with one high on Ecstasy although drug use is denied and where Ecstasy use is rarely fatal.
Holding the Sheriff's office liable for Frank's death under the facts presented here would impose the unreasonable duty on the Sheriff of providing medical treatment to every intoxicated person that is arrested. We *900 are not prepared to require such a duty on the Sheriff's office.
For the foregoing reasons, the judgment of the trial court is reversed and we enter judgment in favor of Harry Lee, in his capacity as Sheriff of Jefferson Parish, and Jefferson Parish Sheriff's Office and against plaintiffs, Beatrice Brown, Leroy A. Brown, Sr., Leroy A. Brown, Jr., and Clinton Brown, dismissing plaintiffs' demands with prejudice.
REVERSED AND RENDERED.
NOTES
[1] It is uncertain whether Frank Brown died of a true overdose or from a "hypersensitive reaction", a type of allergic reaction which essentially causes the heart to stop beating.
[2] Civil Code Article 2315 provides:

Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.
Damages may include loss of consortium, service, and society, and shall be recoverable by the same respective categories of persons who would have had a cause of action for wrongful death of an injured person.
[3] Civil Code Article 2316 provides:

Every person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill.